# In the United States Court of Federal Claims

### OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * * * * * * *

| | | |
|---|---|---|
| JEREMY HODGE, | * | |
| | * | |
| Petitioner, | * | No. 09-453V |
| | * | Special Master Christian J. Moran |
| | * | Filed: March 23, 2015 |
| v. | * | |
| | * | |
| SECRETARY OF HEALTH AND | * | Statute of limitations; equitable |
| HUMAN SERVICES | * | tolling; mental illness; |
| | * | obsessive-compulsive disorder |
| Respondent. | * | ("OCD"). |

* * * * * * * * * * * * * * * * * * * * * * * * *

Clifford J. Shoemaker, Shoemaker, Gentry & Knickelbein, Vienna, VA, for petitioner;
Althea Walker Davis, Unites States Dep't of Justice, Washington, DC, for respondent.

### PUBLISHED DECISION GRANTING MOTION TO DISMISS[1]

In this case under the National Vaccine Injury Compensation Program ("the Program"), Jeremy Hodge seeks compensation for injuries he alleges were caused by hepatitis A and B vaccinations administered on March 17, 2006, and April 15, 2006. The Secretary of Health and Human Services filed a motion to dismiss based on the Vaccine Act's statute of limitations, 42 U.S.C. § 300aa-16(a)(2). The evidence indicates that Mr. Hodge filed outside the time permitted. Additionally, Mr. Hodge has not established that equitable tolling can be used to correct his untimely filed petition. Accordingly, **this case is dismissed as untimely filed.**

---

[1] The E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899, 2913 (Dec. 17, 2002), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

## I.    FACTUAL AND PROCEDURAL HISTORY

### A. Mr. Hodge's Background

Mr. Hodge was born in 1987.  Exhibit 3.  At the time of his birth, Mr. Hodge's father had attention deficit disorder (ADD), and a grandparent possibly had obsessive-compulsive disorder (OCD).  Exhibit 5 at 4.  His great-grandfather and grandfather were both diagnosed with bipolar disorder.  Exhibit 10 at 2.

While on a camping trip to Big Sur, California in approximately 2005, Mr. Hodge was bitten by a tick.  Afterwards, he developed progressive fatigue, headaches, OCD, and cognitive disturbances.  Exhibit 7 at 22; see also exhibit 5 at 2 (indicating that Mr. Hodge's OCD commenced at the age of seventeen).

On March 17, 2006, Mr. Hodge, who was eighteen years old at the time, was seen by Dr. Rodriguez at the Noble Community Choice Provider Medical Group ("Noble Community") for consistent headache and sinus pressure.  Exhibit 5 at 2-6.  Mr. Hodge's physical exam was normal, and upon Dr. Rodriguez's request, Mr. Hodge received hepatitis A and B vaccinations at this visit.  Id at 4-7.  That night, according to an affidavit filed years later, Mr. Hodge became ill, experiencing hot flashes followed by chills and stabbing pains in his back, legs and arms.  Exhibit 9 (Aff. of Erika Olsen) at 2.  However, these symptoms dissipated the next day, and Mr. Hodge received his hepatitis B booster vaccination on April 25, 2006.  Exhibit 1; exhibit 9.

Mr. Hodge was evaluated at Valley Presbyterian Hospital emergency room on June 2, 2006, for complaints of balance issues, dizziness, eye movement disturbances, fatigue, and pain.  Exhibit 6 at 1, 7-8.  Mr. Hodge's blood tests and CT scan were normal, and he was diagnosed with dizziness and "arthralgias-myalgias s[tatus] p[ost] hepatitis vaccination."  Id. at 6.  His condition on discharge was improving and he was prescribed Meclizine to treat his dizziness.  Id.

On June 8, 2006, Mr. Hodge's mother called Noble Community to complain about a neurologist who was unfamiliar with using Zoloft to treat OCD.  Exhibit 5 at 4.  She also expressed concern for Mr. Hodge's loss of weight.  Id.  She indicated that she wanted an MRI, which Dr. Rodriguez later agreed to order.  Id.  However, an MRI was not performed in 2006 because, according to Mr. Hodge, he

2

lacked insurance to pay for an MRI.  Pet'r's Memo. In Supp. of Appl. of Equitable Tolling ("Pet'r's Memo"), filed Jan. 30, 2014, at 10.

On August 23, 2006, Mr. Hodge was evaluated at Encino-Tarzana Regional Medical Center for fatigue and numbness.  Exhibit 4 at 12-13.  At this evaluation, Mr. Hodge reported that these symptoms began intermittently since he received the hepatitis B vaccination four months prior.  Id. at 4.  After diagnostic tests, he was diagnosed with "diffuse paresthesias" and discharged.  Id. at 12-13.

On September 9, 2007, Mr. Hodge was evaluated for chest pain, OCD problems, and palpitations at West Hills Hospital and Medical Center.  Exhibit 8 at 76.  The physician's notes stated "the mother almost controls the situation and provides the history," because Mr. Hodge "appears to be unable to make a cogent history" of his condition and symptoms.  Id.  Mr. Hodge's mother averred that Mr. Hodge had a long history of OCD and had been taking several psychotropic medications without benefit.  Mr. Hodge was reported to have suffered from palpitations since starting to take Dextrostat for possible ADHD.  Id.  At this visit, Mr. Hodge's mother maintained that Mr. Hodge had had a significant change in his personality for the past 18 months, which she attributed to the "hepatitis vaccinations."  Id. at 76-77.  The evaluating physician stated that Mr. Hodge has an underlying psychological cause for his discomfort and that he has significant impairment due to his OCD.  Id.

In November 2007, physicians at the San Fernando Valley Community Mental Health Center Transitional Youth Outpatient Program assessed Mr. Hodge.  During the evaluation, Mr. Hodge's OCD symptoms were described in detail.  Exhibit 10 at 2-3.  Mr. Hodge's medications included Lithium, Risperdal, and Ativan to control his symptoms with his response being characterized as fair.  Mr. Hodge was scheduled to be seen two to three times a week to manage and to reduce his symptoms.  Cognitive behavioral therapeutic interventions were designed to be used as part of the treatment.  Id. at 59.  Between November 2007 and January 2008, Mr. Hodge intermittently attended therapy and then stopped attending therapy at the clinic.  Id. at 24, 26, 66.  After he discontinued attending therapy on February 4, 2008, Mr. Hodge did not respond to attempts by the clinic to reach him.  Id. at 8, 24.  As a result, Mr. Hodge was discharged from the therapy at the clinic on September 16, 2008.  Id. at 8.

On February 13, 2009, Mr. Hodge was seen in the emergency room at Olive View-UCLA Medical Center ("Olive View") for chronic headaches with diffuse pain for the past year.  Exhibit 7 at 8.  Dr. Guzman-Marin ordered an MRI to find the cause of Mr. Hodge's headaches and to rule out a mass or lesion.  Mr. Hodge received this MRI on February 14, 2009.  Exhibit 2 at 1-2.  Dr. Tho-Anh Hoang, who reviewed the MRI, noted white matter hyperintensities, and suggested a follow-up investigation for suspected demyelinating disease.  Id.  On May 4, 2009, Mr. Hodge received another MRI of his brain.  Exhibit 7 at 210-11.  The MRI showed white matter hyperintensities in the periventricular, deep and subcortical white matter regions of the brain.  Id.  Mr. Hodge's doctor suspected a demyelinating disease.  Id.

On August 4, 2009, Mr. Hodge was evaluated by Dr. Mishra, a neurologist at Olive View, for headaches, intermittent arm numbness, arm and back spasms, OCD problems, and bipolar disorder.  Exhibit 7 at 45-46.  Dr. Mishra ordered an MRI with multiple sclerosis (MS) protocol, multiple blood tests, and a lumbar puncture to determine if Mr. Hodge suffered from either MS, Lyme disease, or encephalitis.  Id.  The August 11, 2009 MRI showed "demyelinating plaques in the white matter of both hemispheres" of the brain, and strengthened the suspicion of a demyelinating disease.  Id. at 65.

To further test for Lyme disease, Mr. Hodge was seen by an infectious disease specialist, Dr. Dasher, on October 22, 2009.  Exhibit 7 at 23-25.  Dr. Dasher stated that Mr. Hodge had a non-specific cognitive disorder and referred Mr. Hodge for neurocognitive and psychological testing.  Id.

On November 17, 2009, a polymerase chain reaction test of the cerebrospinal fluid was also done to rule out Lyme disease and the result was negative.  Id. at 173.  Although evidence of Lyme disease had not been found in Mr. Hodge's cerebrospinal fluid, a follow-up MRI done on April 13, 2010, demonstrated a stable FLAIR[2] hyperintense foci in the brain most consistent with a history of Lyme disease.  Id. at 132-33.

---

[2] Fluid attenuated inversion recovery; a type of inversion recovery in MRI in which the signal from water is reduced by timing the delay of the inversion pulse.  Stedman's Medical Dictionary 740 (28th ed. 2006).

4

To further test for MS, on November 17, 2009, a lumbar puncture was done at Olive View. Id. at 174-75. Although the result was consistent with MS, further clinical tests were necessary to confirm the diagnosis. Id. A visual evoked potential study was done on December 23, 2009. The result was not determinative for MS. Exhibit 7 at 27-28.

Over the course of the following three years, Mr. Hodge continued to see specialists for his suspected demyelinating disease. During this period, Mr. Hodge continued follow-up visits with the infectious disease clinic. Exhibit 7 at 10-11; exhibit 12 at 56, 61-63, 71. Mr. Hodge continued suffering from his central nervous system symptoms, which were treated with medication. Exhibit 12 at 21, 23-24, 39-45, 54.

On August 23, 2013, the doctor whom Mr. Hodge retained in this litigation, Dr. Carlo Tornatore, opined that Mr. Hodge may be suffering from neuroborreliosis, a late manifestation of Lyme disease. Exhibit 18 (Dr. Tornatore's report) at 2; see also exhibit 12 at 11(stating evidence "could be consistent with Lyme disease"); exhibit 7 at 24 (indicating evidence shows "possible Lyme dz [sic]"). Dr. Tornatore further opined that given the presumptive neuroborreliosis, the vaccine may have aggravated his underlying autoimmune demyelinating disorder. Id.

## B. Procedural History

Represented by Mr. Clifford Shoemaker, Mr. Hodge filed the petition on July 15, 2009, alleging that he suffered "various injuries" after receiving hepatitis A and hepatitis B vaccinations in March and April of 2006. Pet. at 2, 5-6. The petition did not define the injuries for which Mr. Hodge was seeking compensation. The petition acknowledged a potential statute of limitations problem. Pet. at 2. In the initial status conference on September 3, 2009, the Secretary raised the statute of limitations problem and consistently reminded Mr. Hodge about this problem. Nevertheless, Mr. Hodge pressed forward. Between November 2009 and January 2012, Mr. Hodge filed medical records (exhibits 1-8, 10-12) and an affidavit from his mother (exhibit 9) in support of his claims, which are summarized above. Mr. Hodge did not submit an affidavit from himself.

After Mr. Hodge appeared to have filed most of the relevant medical records, the Secretary filed a Rule 4 report and motion to dismiss the petition on

April 30, 2012. The Secretary contended that Mr. Hodge explained his symptoms but did not state a specific injury with a specific date of onset that resulted from the March and April 2006 vaccinations. Resp't's Mot. to Dismiss at 13, 18. Further, the Secretary contended that the petition was untimely because Mr. Hodge experienced various symptoms prior to July 15, 2006, 36 months before the petition was filed. Id.

Mr. Hodge filed several motions for enlargement of time that were granted. Mr. Hodge filed more medical records on January 4, 2013 (exhibits 13-14), and again on June 25, 2013 (exhibits 15-17). During the status conferences, the Secretary continued to question the reasonable basis for this claim. See order dated June 27, 2013.

On August 23, 2013, Mr. Hodge filed an export report from Dr. Tornatore. Exhibit 18 at 2. Dr. Tornatore opined that "the diagnosis of neuroborreliosis would not be unreasonable." Id. Furthermore, Dr. Tornatore explained that the medical records show that the neuroborreliosis began in 2005. Id. at 2 (citing exhibit 12 at 11, 245-47; exhibit 7 at 22, 172-75, 204-05, 209, 213). Dr. Tornatore also maintained that Mr. Hodge's dizziness and eye movement disturbances on June 2, 2006, evidenced a worsening of his "underlying autoimmune demyelinating disorder." Id. Although Dr. Tornatore's report filled some medical gaps in Mr. Hodge' evidence, Mr. Hodge had not responded to the legal arguments in the Secretary's motion to dismiss.

On January 30, 2014, Mr. Hodge filed his memorandum, in which he argued that the running of the statute of limitations should be tolled because none of Mr. Hodge's medical providers associated his symptoms with a vaccine injury. Pet'r's Memo. at 1-2. Because of that fact, Mr. Hodge contended that he and his mother were duly diligent in pursuing his Program rights, but lacked a good faith basis to file a claim within three years of the onset of Mr. Hodge's injury. Id. at 2. Mr. Hodge argued that his claim should be allowed under a "discovery rule," under which the cause of action did not accrue until he had evidence that his vaccination could have potentially caused his injury. Id. at 4.

On May 9, 2014, the Secretary filed a response to petitioner's January 30, 2014 memorandum. The Secretary argued that this case does not merit equitable tolling because the Vaccine Act does not contain a discovery rule. Resp't's Resp.,

filed May 9, 2014, at 1-2, 16 (citing Cloer v. Sec'y of Health & Human Servs., 654 F.3d 1322, 1337 (Fed. Cir. 2011) (en banc)).

On October 1, 2014, Mr. Hodge filed a reply, asserting that his severe mental illness constituted an extraordinary circumstance that prevented a timely filing of the claim. Mr. Hodge further argued that he exercised due diligence in pursuing his claim. Thus, he asserted the doctrine of equitable tolling permits his action to continue. Pet'r's Reply, filed Oct. 1, 2014, at 1-2, 7. With Mr. Hodge's reply brief, the two issues are ready for adjudication.

## II. STATUTE OF LIMITATIONS

The Vaccine Act limits the time in which a claim may be filed. The Vaccine Act states that

> In the case of … a vaccine set forth in the Vaccine Injury Table which is administered after October 1, 1988, if a vaccine-related injury occurred as a result of the administration of such vaccine, no petition may be filed for compensation under the Program for such injury after the expiration of 36 months after the date of the occurrence of the first symptom or manifestation of onset or of significant aggravation of such injury.

42 U.S.C. §§ 300aa-16(a)(2). Therefore, to be timely, a petitioner must file a Program petition within 36 months of the presentation of the first symptom of an alleged vaccine-related injury. "[T]he statute of limitations begins to run on a specific statutory date: the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury recognized as such by the medical profession at large." Cloer, 654 F.3d at 1340. The cause of action accrues on the date when the first sign or symptom of injury appears, not when a petitioner knew or reasonably should have known about the injury or its cause. Id. at 1338-39.

Furthermore, "a discovery rule cannot be read into the Vaccine Act statute of limitations." Id. at 1339. The Federal Circuit stated that equitable tolling under the Vaccine Act due to a petitioner's "unawareness of a causal link between an injury and administration of a vaccine is unavailable." Id. at 1345.

Here, it appears that Mr. Hodge is pursuing a claim that the vaccinations given to him in March and April 2006 significantly aggravated his neuroborreliosis. See exhibit 18 (Dr. Tornatore's report) at 2.[3] Further, Dr. Tornatore identified Mr. Hodge's dizziness and eye movement disturbances on June 2, 2006, as a worsening of the underlying neuroborreliosis. Id. Because this manifestation occurred more than 36 months before the petition was filed, the case is untimely. Mr. Hodge does not dispute that his petition was not timely filed. Pet'r's Memo. at 10-11. Mr. Hodge has asked the court to apply the doctrine of equitable tolling to correct his untimely filed petition. Id. at 1.

## III. EQUITABLE TOLLING

According to Cloer, equitable tolling of the statute of limitations may occur in "extraordinary circumstances," such as when a petitioner is the victim of fraud or duress, or when a procedurally deficient pleading was timely filed. Cloer at 1344-45 (citing Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990)). Equitable tolling may not apply simply because the statute of limitations deprives a petitioner of his or her claim. Cloer, 654 F.3d at 1344.

Mr. Hodge does not allege either that the Secretary employed deception or trickery resulting in Mr. Hodge missing the deadline, or that he filed a defective pleading. Mr. Hodge argues that his mental illness fulfills the requirement of extraordinary circumstances. This is the only argument that warrants extensive discussion.[4]

---

[3] Mr. Hodge has not amended his July 15, 2009 petition to incorporate information his attorney later obtained.

[4] Mr. Hodge argues that the doctrine of equitable tolling should apply to him because he diligently pursued his rights in filing this claim. People pursue their claims diligently when they have filed within the statute of limitations period albeit in a defective manner. See Irwin, 498 U.S. at 96, 111; see also Cloer, 654 F.3d at 1344–45. Mr. Hodge did not file a defective pleading.
In addition, Mr. Hodge argues that his family's lack of insurance did not allow for further testing to diagnose a physiological injury or to allow Mr. Hodge's medical providers to associate Mr. Hodge's injuries with the onset of a vaccine injury. Pet'r's Memo. at 8-11. This argument conflicts with the Federal Circuit's holding that "equitable tolling under the Vaccine Act due to

8

In this jurisdiction, Barrett v. Principi established the controlling test for equitable tolling due to mental illness. The Federal Circuit held that one can establish extraordinary circumstance due to mental illness "by showing that [one's] untimely filing was the direct result of a mental illness that rendered him incapable of rational thought or deliberate decision making, or incapable of handling his own affairs or unable to function in society." Barrett v. Principi, 363 F.3d 1316, 1321 (Fed. Cir. 2004). The standard means that "a medical diagnosis alone or mere assertions of mental problems will not suffice." Id.[5] Courts should analyze requests for equitable tolling due to mental illness on a "case-by-case basis." Dixon v. Shinseki, 741 F.3d 1367, 1377 (Fed. Cir. 2014).

Mr. Hodge's argument that his history of mental illness constitutes an extraordinary circumstance for the purposes of equitable tolling is unsubstantiated. As recounted above, Mr. Hodge has been diagnosed with and treated for OCD. He has also been referred for cognitive testing. But, as held in Barrett, "a medical diagnosis alone…will not suffice." 363 F.3d at 1321. Mr. Hodge must also establish that the "mental illness rendered him incapable of 'rational thought or deliberate decision making,' or 'incapable of handing [his] own affairs or unable to function [in] society.'" Barrett, 363 F.3d at 1321 (citations omitted). Mr. Hodge

---

unawareness of a causal link between an injury and administration of a vaccine is unavailable." Cloer, 654 F.3d at 1345.

In a similar case, the petitioner missed the filing deadline and argued that her preexisting chronic illness and family difficulties constituted an extraordinary circumstance that should warrant equitable tolling. Anderson v. Sec'y of Health & Human Servs., No. 12-016V, 2013 WL 691003, at *4-5 (Fed. Cl. Spec. Mstr. Jan. 29, 2013). The special master ruled that the petitioner's situation did not satisfy the extraordinary circumstance requirement for equitable tolling. Id. at *5 (citing Irwin, 498 U.S. at 96).

[5] The Federal Circuit also stated that when one is represented by counsel, one must also demonstrate that "the mental illness impaired the attorney-client relationship." Barrett, 363 F.3d at1321 (internal citations and quotations omitted). Mr. Hodge's attorney, Mr. Shoemaker, has stated that he filed the petition within two days of being contacted by Mr. Hodge's mother. Pet. at 2.

9

was given an opportunity to substantiate his claim that his inability to meet the limitations period was a direct result of his mental illness but failed to do so.[6]

Mr. Hodge acknowledges that when he received the vaccine, he was legally an adult and deemed by his mother to be competent. Pet'r's Memo. at 8, 10. Furthermore, Mr. Hodge has not presented any evidence showing that he was the ward of a guardian. Id.

Mr. Hodge has not satisfied his burden of demonstrating that the Vaccine Act's statute of limitations should be equitably tolled. Thus, Mr. Hodge did not establish that his mental illness was an extraordinary circumstance that rendered him incapable of rational thought or deliberate decision-making. See Barrett, 373 F.3d at 1321. Nor did Mr. Hodge establish that his mental illness left him incapable of handling his own affairs or unable to function in society. Id.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Hodge did not file this action within a time permitted by the statute of limitations. He has not established any circumstances that would justify tolling the statute of limitations on equitable grounds. Thus, the Secretary's motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

s/ Christian Moran.<br>
Christian Moran<br>
Special Master

---

[6] For examples of cases from other jurisdictions rejecting a claimant's mental illness as a justification for equitable tolling, see Vazquez-Rivera v. Figueroa, 759 F.3d 44 (1st Cir. 2014); Bartlett v. Dep't of the Treasury (I.R.S.), 749 F.3d 1 (1st Cir. 2014); Lyons v. Potter, 521 F.3d 981 (8th Cir. 2008); Bove v. Shinseki, 25 Vet.App. 136, 144 (2011).