# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS

* * * * * * * * * * * * * * * * * * * *
| | | |
|---|---|---|
| JEREMY HODGE, | * | |
| by his conservator ERIKA ELSON, | * | No. 09-453V |
| | * | Special Master Christian J. Moran |
| Petitioner, | * | |
| | * | Filed: March 9, 2017 |
| v. | * | |
| | * | Attorneys' fees and costs; interim |
| SECRETARY OF HEALTH | * | award; reasonable basis. |
| | * | |
| Respondent. | * | |

* * * * * * * * * * * * * * * * * * * *

Clifford J. Shoemaker, Shoemaker, Gentry & Knickelbein, Vienna, VA, for petitioner;
Althea Walker Davis, United States Dep't of Justice, Washington, DC, for respondent.

**PUBLISHED DECISION GRANTING MOTION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS ON AN INTERIM BASIS[1]**

The petitioner seeks an award of attorneys' fees and costs on an interim basis and the Secretary opposes that award. **The petitioner is awarded $68,621.72**.

## Background

Mr. Hodge's medical history is complicated. Likewise, the procedural history of this case is complicated. Both the medical history and the procedural history have been set forth in earlier decisions and opinions by judicial officers. Thus, only the most relevant details are included in this opinion.

---

[1] The E-Government Act, 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services), requires that the Court post this decision on its website. Pursuant to Vaccine Rule 18(b), the parties have 14 days to file a motion proposing redaction of medical information or other information described in 42 U.S.C. § 300aa-12(d)(4). Any redactions ordered by the special master will appear in the document posted on the website.

Before Mr. Hodge received the vaccinations at issue, he had been diagnosed with obsessive-compulsive disorder ("OCD"). He also had been bitten by a tick and probably developed Lyme disease.

In March 2006, Mr. Hodge received a dose of the hepatitis A and hepatitis B vaccines. About a month later, he received a second dose of the hepatitis B vaccine. In June 2006, Mr. Hodge complained about dizziness, muscles aches and pain, and fatigue that started after he was vaccinated.

Due to a lack of medical records, the state of Mr. Hodge's health from August 2006 through July 2007 is not known with any detail. By July 10, 2007, Mr. Hodge suffered a psychotic break. He was not competent to handle his own affairs from July 10, 2007 through July 2008.

In July 2009, Mr. Hodge's mother, Erika Elson, consulted Clifford Shoemaker, the attorney now representing Mr. Hodge. Ms. Elson provided the results of a May 18, 2009 MRI, maintaining that this MRI showed that her son's brain was damaged and Ms. Elson attributed the damage to the 2006 vaccinations. Mr. Shoemaker anticipated that the statute of limitations could present a problem and, therefore, filed a petition without first gathering any medical records. The petition suggested that Mr. Hodge suffered from a demyelinating disease.

Over the next years, Mr. Shoemaker collected and filed Mr. Hodge's medical records. The Secretary often raised a concern about the statute of limitations. See Resp't's Rep., filed Apr. 30, 2012, at 17-19. However, Mr. Shoemaker pressed forward. As part of the process for resolving whether the statute of limitations bars Mr. Hodge's action, he was ordered to obtain a report from an expert. The expert was directed to state when Mr. Hodge first manifested a sign or symptom that a vaccination caused. The expert was further directed not to present an opinion regarding causation. Order, issued Apr. 24, 2013.

Mr. Hodge retained Carlo Tornatore, a neurologist who has often assisted petitioners in the Vaccine Program. Dr. Tornatore opined that the vaccinations made Mr. Hodge's Lyme disease worse. Dr. Tornatore identified the June 2006 reports of dizziness and eye movement disturbances as symptoms of the worsening. Exhibit 18.

2

With the parties' receipt of Dr. Tornatore's report, they argued whether the statute of limitations barred Mr. Hodge's claim. Hodge 1 found that it did bar the action and that Mr. Hodge was not entitled to equitable tolling. 2015 WL 1779274 (Fed. Cl. Spec. Mstr. Mar. 23, 2015), vacated by Hodge, 123 Fed. Cl. 206 (2015). In Hodge 2, the Court of Federal Claims affirmed the conclusion with respect to the statute of limitations but vacated the decision with respect to equitable tolling. 123 Fed. Cl. 206. After remand, Hodge 3 ruled that Mr. Hodge was entitled to equitable tolling due to his mental illness. The Hodge 3 ruling contained both legal holdings and factual findings. 2015 WL 9685916 (Fed. Cl. Spec. Mstr. Dec. 21, 2015).

After Hodge 3 determined that the case could proceed, Ms. Elson was appointed conservator for Mr. Hodge. Exhibit 28 (dated Aug. 25, 2016). The caption was accordingly changed to reflect that Mr. Hodge is proceeding through his conservator on November 9, 2016.

Meanwhile, on May 10, 2016, Mr. Hodge filed a motion for an award of attorneys' fees and costs. Mr. Hodge requested a total of $106,674.97. The Secretary opposed this motion.

After Mr. Hodge filed his motion for attorneys' fees and costs, he filed a second report from Dr. Tornatore. In this report, Dr. Tornatore opined that the vaccinations significantly aggravated Mr. Hodge's pre-existing OCD. Exhibit 29. The Secretary currently is responding to Dr. Tornatore's report.

On February 16, 2017, Mr. Hodge was ordered to file a status report addressing two questions raised by his May 2016 motion for an interim award of attorneys' fees and costs. On March 2, 2017, Mr. Hodge addressed those questions in the context of filing an Amended Motion for Interim Fees and Costs, which included additional expenses and additional time. Am. Mot. for Interim Attorneys' Fees and Costs, filed Mar. 2, 2017.

## Analysis

Adjudicating a motion for an award of attorneys' fees and costs involves answering a series of sequential questions, each of which requires an affirmative answer to the previous question. First, whether the petitioner has submitted evidence that makes him eligible to receive an award of attorneys' fees and costs?

Second, whether, as a matter of discretion, the petitioner should be awarded her attorneys' fees and costs on an interim basis?  Third, what is a reasonable amount of attorneys' fees and costs?  These questions are addressed below.

## 1. Eligibility for An Award of Attorneys' Fees and Costs

A petitioner who has not received compensation may be awarded "compensation to cover petitioner's reasonable attorneys' fees and other costs incurred in any proceeding on such petition if the special master or court determines that the petition was brought in good faith and there was a reasonable basis for the claim." 42 U.S.C. § 300aa-15(e)(1).

Respondent does not argue that Mr. Hodge or Ms. Elson lacks good faith, and there is no evidence to indicate either person does not believe the claim is valid.  Thus, the undersigned finds the petition was brought in good faith.

On the other hand, the Secretary does challenge reasonable basis.  The Secretary makes a perplexing argument regarding the statute of limitations.  The Secretary contends:

> Notwithstanding the special master's December 2015 ruling, respondent maintains that petitioner's claim is untimely filed and that equitable tolling for mental illness is not consistent with the Vaccine Act.  While the Federal Circuit has ruled that equitable tolling is available under limited circumstances, the Court has not yet addressed whether equitable tolling based on mental illness is available to vaccine petitioners.  Respondent has not yet exhausted its appellate rights with respect to that issue.  Given the uncertainty with respect to that issue, and the unusual nature of petitioner's injury, respondent contends that it would be prudent for the special master to defer any ruling as to whether there was a reasonable basis for filing this petition until the conclusion of this case.

Resp't's Resp., filed June 9, 2016, at 6.  Essentially, the Secretary appears to be arguing that because the undersigned's interpretation of the Vaccine Act may be erroneous (in that the undersigned held that petitioners in the Vaccine Program

may assert equitable tolling due to mental illness), the petitioner's reasonable basis for the claim is in doubt.

If the Secretary were to exercise his right to seek appellate review of the ruling that allowed an equitable tolling of the statute of limitations, an appellate authority (either the Court of Federal Claims or the Federal Circuit) may change the outcome. Appellate review is a normal part of litigation and intended to correct errors of subordinate tribunals.

In this case, any error in Hodge 3 would be the undersigned's mistake, not Mr. Hodge's wrongdoing. Therefore, it is difficult to understand how an appellate court's correction of any error would serve as a reason to find that Mr. Hodge's case lacked a reasonable basis. At a minimal level, Mr. Hodge's argument for equitable tolling, which he developed more fully on remand after Hodge 2, was persuasive to the undersigned. Even if an appellate authority disagreed with the persuasiveness, the appellate authority would be highly unlikely to find that a previously persuasive argument was frivolous. Therefore, the undersigned rejects the Secretary's assertion that the possibility of appellate review should prevent a finding of reasonable basis.

Before the petitioner filed Dr. Tornatore's second report, the undersigned was more concerned that there was not evidence demonstrating "there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e). However, Dr. Tornatore's second report easily crosses the standard for reasonable basis. Therefore, the undersigned finds that the petitioner satisfies the reasonable basis standard.

## 2. Appropriateness of an Interim Award

When a petitioner meets the eligibility requirements for an award of attorneys' fees and costs on an interim basis, the special master has discretion to make such an award. See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (even after good faith and reasonable basis have been established, the special master must determine "whether to exercise his or her discretion to award attorneys' fees and costs"); cf. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008) (holding that even though permitted under the Vaccine Act, an interim award was not appropriate in that case). When determining the appropriateness of an interim award, the Federal Circuit has

may assert equitable tolling due to mental illness), the petitioner's reasonable basis for the claim is in doubt.

If the Secretary were to exercise his right to seek appellate review of the ruling that allowed an equitable tolling of the statute of limitations, an appellate authority (either the Court of Federal Claims or the Federal Circuit) may change the outcome. Appellate review is a normal part of litigation and intended to correct errors of subordinate tribunals.

In this case, any error in Hodge 3 would be the undersigned's mistake, not Mr. Hodge's wrongdoing. Therefore, it is difficult to understand how an appellate court's correction of any error would serve as a reason to find that Mr. Hodge's case lacked a reasonable basis. At a minimal level, Mr. Hodge's argument for equitable tolling, which he developed more fully on remand after Hodge 2, was persuasive to the undersigned. Even if an appellate authority disagreed with the persuasiveness, the appellate authority would be highly unlikely to find that a previously persuasive argument was frivolous. Therefore, the undersigned rejects the Secretary's assertion that the possibility of appellate review should prevent a finding of reasonable basis.

Before the petitioner filed Dr. Tornatore's second report, the undersigned was more concerned that there was not evidence demonstrating "there was a reasonable basis for the claim for which the petition was brought." 42 U.S.C. § 300aa–15(e). However, Dr. Tornatore's second report easily crosses the standard for reasonable basis. Therefore, the undersigned finds that the petitioner satisfies the reasonable basis standard.

## 2. Appropriateness of an Interim Award

When a petitioner meets the eligibility requirements for an award of attorneys' fees and costs on an interim basis, the special master has discretion to make such an award. See Rehn v. Sec'y of Health & Human Servs., 126 Fed. Cl. 86, 92 (2016) (even after good faith and reasonable basis have been established, the special master must determine "whether to exercise his or her discretion to award attorneys' fees and costs"); cf. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1352 (Fed. Cir. 2008) (holding that even though permitted under the Vaccine Act, an interim award was not appropriate in that case). When determining the appropriateness of an interim award, the Federal Circuit has

considered such factors as protracted proceedings, costly experts, and undue hardship. Shaw v. Sec'y of Health & Human Servs., 609 F.3d 1372, 1375 (Fed. Cir. 2010); Avera, 515 F.3d at 1352.

Here, the Secretary has not made any specific argument regarding the Avera factors. The proceedings have already been protracted as the petitioner has already filed one motion for review. Petitioner has also retained one expert, Dr. Tornatore, and although his invoice was not particularly huge in May 2016, the cost of his services should be reimbursed. Finally, the undue hardship standard discussed in Avera and Shaw includes hardship for counsel as well as petitioners. This conclusion appears to be the consensus among judicial officers. See Rehn, 126 Fed. Cl. at 94; Al-Uffi v. Sec'y of Health & Human Servs., No. 13-956V, 2015 WL 6181669, at *8 (Fed. Cl. Spec. Mstr. Sept. 30, 2015). Delaying an award of attorneys' fees until the end of the case could impose an undue hardship as the Secretary has indicated that he might appeal. For these reasons, an interim award is appropriate.

### 3. Reasonableness of Requested Amounts

The petitioner requests a total of $106,674.97. Effectively, the petitioner seeks $96,395.25 in attorneys' fees, plus $10,234.75 in attorneys' costs, plus $44.97 in costs incurred by Ms. Elson.[2]

### A. Attorneys' Fees

Under the Vaccine Act, a special master may award reasonable attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). Reasonable attorneys' fees are calculated by multiplying a reasonable hourly rate by a reasonable number of hours expended on litigation, the lodestar approach. Avera, 515 F.3d at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)); Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). A petitioner's counsel in the Vaccine Program is paid the forum rate unless the bulk of the work is performed in a locale other than the forum (District of Columbia) and the local rate is

---

[2] The figures presented in the text are adjusted because the petitioner has claimed that the work performed by Dr. Greenspan is a cost. However, because Dr. Greenspan performed work that an attorney could have done, his invoice is treated as part of the attorneys' fees. The change in categorization, however, does not affect the outcome.

significantly lower than the forum rate. Avera, 515 F.3d at 1349. If these two requirements are met, the Davis exception applies, and that petitioner's counsel is paid according to the local rate. Id.; see Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. United States Envtl. Prot. Agency, 169 F.3d 755, 757-60 (D.C. Cir. 1999).

In this case, petitioner has requested work that four professionals performed: Clifford Shoemaker, Renee Gentry, Sabrina Knickelbein, and Mark Greenspan. Special masters are familiar with all.

The May 2016 motion for an award of attorneys' fees on an interim basis is similar to a motion that Mr. Shoemaker submitted in another case. See Moriarty v. Sec'y of Health & Human Servs., No. 03-2876V, 2016 WL 7666538 (Fed. Cl. Spec. Mstr. Dec. 16, 2016). In both Moriarty and in the case at hand, the petitioners sought reimbursement for work performed by Mr. Shoemaker, Ms. Gentry, and Ms. Knickelbein.[3] The attorneys requested compensation at different hourly rates for different years.

A deficiency in the May 2016 application is that the basis for the proposed hourly rates was not provided. This was true in the previous case as well: "The Moriartys supplied no information explaining how these hourly rates were determined." Id. at *3. Determining reasonable hourly rates as part of the process for adjudicating the pending fee application will consume judicial resources and will delay adjudications for other petitioners, seeking either compensation or final awards of attorneys' fees. In Moriarty, the undersigned partially solved this conundrum by compensating the attorneys at a previously awarded rate with the expectation that the petitioners would file a more complete application for attorneys' fees and costs at the end of the case. This solution, although not immediately granting the petitioner all the relief being sought, attempts to address a burgeoning docket. See Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008) (stating district courts "are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them").

---

[3] Mr. Greenspan appears not to have worked on Moriarty.

The undersigned will follow the approach taken in Moriarty here. The undersigned will compensate Mr. Shoemaker at $250 per hour, Ms. Gentry at $200 per hour, and Ms. Knickelbein at $155 per hour. See Ray v. Sec'y of Health & Human Servs., No. 04-184V, 2006 WL 1006587, at *9-10, *13 n.9 (Fed. Cl. Spec. Mstr. Mar. 30, 2006) (awarding slightly less per hour for work performed in 2005). As in Moriarty, the undersigned fully expects that these rates will increase as part of an adjudication of final fees. With respect to the number of hours, the undersigned accepts the proposed number of hours as reasonable for purposes of expediting an award.[4] A final fees decision may revisit the number of hours.

The remaining professional who performed work typically done by members of a law firm is Dr. Greenspan. In May 2012, Dr. Greenspan spent approximately 50 hours summarizing medical records at a rate of $250 per hour. Given Dr. Greenspan's training as an attorney and a doctor, this hourly rate is reasonable. However, given this same training, the review of records should have taken less than a normal (40 hour) work-week. Thus, Dr. Greenspan's invoice is reduced by 20 percent. The petitioner is awarded $9,950 for his work.

In sum, for this interim award, the petitioner is awarded $58,342 in attorneys' fees.

### B. Costs

The statutory requirement that only reasonable amounts be awarded applies to costs as well as fees. See Perriera v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Reasonable expert costs are calculated using the same lodestar method as is used when calculating attorneys' fees. Masias v. Sec'y of Health & Human Servs., No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009).

---

[4] Mr. Shoemaker's fees are $32,225 (128.9 hours (through May 20, 2016) multiplied by $250 per hour). Ms. Gentry's fees are $8,820 (44.1 hours (through March 23, 2016) multiplied by $200 per hour). Ms. Knickelbein's fees are $7,347 (47.4 hours (through April 7, 2016) multiplied by $155 per hour). Fees for these three professionals total $48,392.

The petitioner asks for $10,279.72 in costs. A small amount ($634.75) is for routine items such as obtaining medical records. This category includes the costs ($44.97) Ms. Elson incurred personally. All are reasonable.

The bulk of the costs are for obtaining reports from Dr. Tornatore. Dr. Tornatore has presented an invoice for $9,600. This represents 24 hours at a rate of $400 per hour.

Dr. Tornatore's proposed rate is accepted as reasonable. With respect to the number of hours, Dr. Tornatore's charge of 24 hours is also reasonable. However, Dr. Tornatore is encouraged to provide more detailed descriptions of his activities. For example, his third and fourth entries simply state "Review records" and the time associated is 2.0 hours and 2.5 hours respectively. Later, another entry is 2.5 hours for "Work on report; review more articles." Dr. Tornatore could have easily listed which records he is reviewing (exhibits 1-4 or exhibits 9-10, etc.) and which articles he is reviewing. To ensure that a reviewing special master can understand what Dr. Tornatore was doing, Dr. Tornatore should add more details to his activities.

Total costs, through May 10, 2016, are $10,279.72.[5]

## Conclusion

The undersigned finds an interim award of attorneys' fees and costs appropriate at this time. Of the total amount of attorneys' fees requested ($96,395.25), Ms. Elson is awarded **$58,342.00** with additional compensation anticipated. Of the total amount of costs requested ($10,279.72), Ms. Elson is awarded **$10,279.72.**

**Accordingly, the undersigned awards the total of $68,576.75 as a lump sum in the form of a check jointly payable to Ms. Elson and her counsel, Clifford Shoemaker. An additional $44.97 shall be payable to Ms. Elson alone.**

---

[5] Equal to $634.75 + $44.97 + $9,600.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.

**IT IS SO ORDERED.**

s/Christian J. Moran
Christian J. Moran
Special Master
